AO 106 (Rev. 01/09)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Facebook Account with Profile ID 100009605431588 and<br>Facebook Page Antonio Ramirez (RackPackRapBattleLeague) | )<br>)<br>)<br>)<br>)<br>) |

Case No.  18-MJ-1199

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____Northern_____ District of _____California_____ *(identify the person or describe property to be searched and give its location):*  Facebook Account with Profile ID 100009605431588 and Facebook Page Antonio Ramirez (RackPackRapBattleLeague), located on the servers of Facebook, Inc., with headquarters at 1601 Willow Road, Menlo Park, California, which are more fully described in Attachment A, which is attached hereto and incorporated by reference herein.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):*  Evidence pertaining to witness tampering, as more fully set forth in Attachment B, which is attached hereto and incorporated by reference herein, concerning violations of 18 U.S.C. §§ 1503 and 1512.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___18___ U.S.C. § ___1503 and 1512(c)___ , and the application is based on these facts:  See attached Affidavit

☑ Continued on the attached sheet.

☑ Delayed notice of _60_ days (give exact ending date if more than 30 days: ___12/28/2018___ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Karen Wisniewski, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___10/29/2018___

_____
*Judge's signature*

City and state:  Buffalo, New York

JEREMIAH J. MCCARTHY U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Karen Wisniewski, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.      I am employed as a Special Agent (SA) with United States Homeland Security Investigations (HSI), and have been employed in that capacity since March 2003. Before that time, I was employed as a United States Customs Service Special Agent since September 1998. As a Special Agent with HSI, I am a federal law enforcement officer within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure and Title 18, United States Code, Section 2510(7). As such, I am an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in the United States Code, including Title 18, United States Code, Section 2516.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Marcellus Overton has committed violations of Title 18, United States Code, Sections 1503 and 1512(c). There is also probable cause to search the information described in Attachment A for evidence of these, as described in Attachment B.

## PROBABLE CAUSE

5.      On or about January 13, 2015, a grand jury in the United States District Court for the Western District of New York charged Marcellus Overton with one count of sex trafficking of a minor, in violation of Title 18, United States Code, Section 1591; and one count of interstate transportation of a minor for purposes of prostitution, in violation of Title 18, United States Code, Section 2423. A trial on those charges is scheduled to commence on November 13, 2018.

6.      Throughout the course of the investigation and prosecution of Overton for these charges, various witnesses have reported efforts by Overton to contact them or to persuade them to provide false testimony regarding Overton's conduct. When I arrived at the residence of a witness identified as "W-1" to serve W-1 with a subpoena for grand jury testimony in the investigation, Overton was present at W-1's residence. W-1 later reported that Overton, who was aware of a grand jury investigation into his conduct, had attempted to persuade W-1 to provide false testimony regarding the circumstances of a trip to Charlotte, North Carolina and Atlanta, Georgia that formed the basis for a charge that Overton transported a minor to those locations for purposes of prostitution. A second witness, identified as "W-2," later reported that the defendant attempted to persuade W-2 to present similar false testimony regarding the same trip.

2

7.     In or about October 2017, an individual hereinafter identified as Confidential Informant 1 ("CI-1"), told me that a person using the Facebook name Antonio Ramirez had contacted CI-1 on Facebook and engaged in a number of communications with CI-1 on Facebook Messenger starting in February 2017. Further investigation revealed that the Antonio Ramirez account home page included the name ""Antonio Ramirez (RackPackRapBattleLeague)" and that the account's Facebook ID is 100009605431588.

8.     In November 2017, the individual using the Antonio Ramirez account made arrangements to meet CI-1 in Niagara Falls, New York.  CI-1 agreed to the meeting, which I surveilled and observed.  I could see that the individual who met with CI-1 as a result of the communications with the Antonio Ramirez account was Marcellus Overton. Overton offered to pay CI-1 for information regarding W-2. As set forth above at paragraph 6, Overton had previously attempted to persuade W-2 to provide false testimony in this case.

9.     In October 2018, a witness identified as "W-3" reported that two individuals known to W-3 had been contacted on Facebook by "Antonio Ramirez" and that the contacts included requests by "Antonio Ramirez" for information about W-3. One of these individuals, identified hereinafter as Confidential Informant 2 ("CI-2"), confirmed that CI-2 had been contacted by "Antonio Ramirez."  In a message to CI-2, "Antonio Ramirez" had asked CI-2 if CI-2 knew a "white BITCH" with the same first name as W-3. When CI-2 asked to which person with that first name "Antonio Ramirez" was referring, "Antonio Ramirez" referred to W-3's Facebook account, confirming that "Antonio Ramirez" was in fact referencing W-3. "Antonio Ramirez" then offered CI-2 money to speak with him about W-3 and attempted a video chat with CI-2, but CI-2 declined the chat. "Antonio Ramirez" stated that he wanted information on W-3, but would not discuss the details on Facebook. "Antonio Ramirez" requested to meet CI-2 in

3

person, but CI-2 did not respond. Finally, "Antonio Ramirez" asked CI-2 not to say anything to W-3 about their contact, and asked CI-2 if CI-2 knew anyone else who might have information about W-3. CI-2 ended the conversation. Further investigation revealed that CI-2 had been contacted by the same Antonio Ramirez account used to contact CI-2, with a home page including the name "Antonio Ramirez (RackPackRapBattleLeague)" and Facebook ID 100009605431588.

## FACEBOOK

10.    Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

11.    Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

12.    Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can

exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

13.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

14.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

15.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video.

When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

16.    Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

17.    If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

18.    Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

19.    Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

20.    Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log

6

includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

21.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

22.     The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

23.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

24.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

25.     Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings;

7

rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

26.   Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

27.   Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

28.   As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  This "user

8

attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

29.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

30.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

31.    Based on the forgoing, I submit that there is probable cause that the items and information sought to be searched and seized will provide evidence of violations of Title 18, United States Code, Sections 1503 and 1512(c).

32.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).]

33.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

## REQUEST FOR SEALING AND DELAYED NOTIFICAITON

34.    I further request that the Court:

(1)    order delayed notification of this search warrant pursuant to 18 U.S.C. § 2703(b)(1)(A), Federal Rule of Criminal Procedure 41(f)(3), and 18 U.S.C. § 3103a(b)(1) and

10

(2)    order that all papers in support of this application, including the affidavit and search warrant, be sealed

for 60 days unless the Court orders otherwise. The aforementioned papers in support of the application discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Failure to seal and/or notification of this warrant would create the potential for targets of the investigation to destroy or tamper with evidence and to alter the method of operation. It would also create the potential for subjects of the investigation to flee, intimidate or attempt to intimidate potential witnesses, or otherwise endanger the health of victims of and witnesses to the conduct referenced herein. Accordingly, there is good cause to seal these documents and delay notification of the warrant, because premature notification or disclosure may seriously jeopardize that investigation.

Karen Wisniewski
Special Agent
U.S. Department of Homeland
Security Investigations

Subscribed and Sworn before me
this 29th day of October 2018

Hon. Jeremiah J. McCarthy
United States Magistrate Judge

11

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with:

| Profile I.D. | Facebook Page |
|---|---|
| 100009605431588 | Antonio Ramirez (RackPack Rap Battle League) |

that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a

company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody,
or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or
information that have been deleted but are still available to Facebook, or have been preserved
pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the
following information to the government for each user ID listed in Attachment A:

(a)      All contact and personal identifying information, including full name, user
identification number, birth date, gender, contact e-mail addresses, Facebook
passwords, Facebook security questions and answers, physical address (including
city, state, and zip code), telephone numbers, screen names, websites, and other
personal identifiers.

(b)      All activity logs for the account and all other documents showing the user's posts
and other Facebook activities;

(c)      All photos and videos uploaded by that user ID and all photos and videos
uploaded by any user that have that user tagged in them;

(d)      All profile information; News Feed information; status updates; links to videos,
photographs, articles, and other items; Notes; Wall postings; friend lists, including
the friends' Facebook user identification numbers; groups and networks of which
the user is a member, including the groups' Facebook group identification
numbers; future and past event postings; rejected "Friend" requests; comments;

gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)   All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)   All "check ins" and other location information;

(g)   All IP logs, including all records of the IP addresses that logged into the account;

(h)   All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)   All information about the Facebook pages that the account is or was a "fan" of;

(j)   All past and present lists of friends created by the account;

(k)   All records of Facebook searches performed by the account;

(l)   All information about the user's access and use of Facebook Marketplace;

(m)   The types of service utilized by the user;

(n)   The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)   All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p)   All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

2

**II.     Information to be searched for and seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Sections 1503 and 1512(c) involving Marcellus Overton since February 1, 2017, including, for each user ID identified on Attachment A, information pertaining to the following matters:

> (a) Communications with or about witnesses in the case against Marcellus Overton, and communications about the facts and circumstances related to the charges against Marcellus Overton for sex trafficking of a minor and interstate transportation of a minor for purposes of prostitution, as alleged in Criminal No. 15-0009.

> (b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

> (c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

> (d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

> (e) The identity of the person(s) who communicated with the user ID about witnesses in the case against Marcellus Overton, or about the facts and circumstances related to the charges against Marcellus Overton for sex trafficking of a minor and interstate transportation of a minor for purposes of prostitution, as alleged in Criminal No. 15-0009, including records that help reveal their whereabouts.

3

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States pof America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Facebook, and my official title is _____. I am a custodian of records for Facebook. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Facebook, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.      such records were kept in the ordinary course of a regularly conducted business activity of Facebook; and

c.      such records were made by Facebook as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____          _____
Date                                                  Signature

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

IN RE:

                                                          18-MJ-

Search Warrant for Facebook Account with
Profile ID 100009605431588 and
Facebook Page
Antonio Ramirez (RackPackRapBattleLeague)

---

## ORDER

The United States has submitted an application pursuant to 18 U.S.C. § 2705(b),
requesting that the Court issue an Order commanding Facebook, Inc. ("Facebook"), an
electronic communication service provider and/or remote computing service, not to notify
any person (including the subscribers and customers of the account(s) listed in the warrant)
of the existence of the attached warrant for 60 days, unless the Court orders otherwise.

The Court determines that there is reason to believe that notification of the existence
of the attached warrant will seriously jeopardize the investigation or unduly delay a trial,
including by, among other things, giving targets an opportunity to flee from prosecution,
destroy or tamper with evidence, change patterns of behavior, intimidate potential witnesses,
or endanger the life or physical safety of an individuals. *See* 18 U.S.C. § 2705(b).

IT IS THEREFORE ORDERED under 18 U.S.C. § 2705(b) that Facebook shall not
disclose the existence of the attached warrant, or this Order of the Court, to the listed
subscriber or to any other person, for 60 days, unless the Court orders otherwise, except that
Facebook may disclose the attached warrant to attorneys for Facebook for the purpose of
receiving legal advice.

IT IS FURTHER ORDERED that the application and this Order are sealed for 60 days, unless the Court orders otherwise.

DATED: Buffalo, New York, October 29, 2018.

_____
HONORABLE JEREMIAH J. MCCARNTY
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

IN RE:

Search Warrant for Facebook Account with
Profile ID 100009605431588 and
Facebook Page
Antonio Ramirez (RackPackRapBattleLeague)

18-MJ-1199

---

## APPLICATION FOR ORDER COMMANDING FACEBOOK, INC.
## NOT TO NOTIFY ANY PERSON OF THE EXISTENCE OF WARRANT

The United States requests that the Court order Facebook, Inc. ("Facebook") and not to

notify any person (including the subscribers and customers of the account(s) listed in the warrant

of the existence of the attached warrant for 60 days, unless the Court orders otherwise.

Facebook is a provider of electronic communication services, as defined in 18 U.S.C. §

2510(15), and/or remote computer services, as defined in 18 U.S.C. § 2711(2). Pursuant to 18

U.S.C. § 2703, the United States obtained the attached warrant, which requires Facebook to

disclose certain records and information to the United States. This Court has authority under 18

U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service

or remote computing service to whom a warrant, subpoena, or court order is directed, for such

period as the court deems appropriate, not to notify any other person of the existence of the

warrant, subpoena, or court order." *Id.*

In this case, such an order would be appropriate because the attached warrant relates to

an ongoing criminal investigation that is neither public nor known to all of the targets of the

investigation, and its disclosure may alert the targets to the ongoing investigation. Accordingly,

there is reason to believe that notification of the existence of the attached warrant will seriously

jeopardize the investigation or unduly delay a trial, including by, among other things, giving targets an opportunity to flee from prosecution, destroy or tamper with evidence, change patterns of behavior, intimidate potential witnesses, or endanger the life or physical safety of an individuals. *See* 18 U.S.C. § 2705(b). Some of the evidence in this investigation is stored electronically. If alerted to the existence of the warrant, the subjects under investigation could destroy that or related evidence, including information saved to their personal computers.

WHEREFORE, the United States respectfully requests that the Court grant the attached Order directing Facebook not to disclose the existence or content of the attached warrant, except that Facebook may disclose the attached warrant to attorneys for Facebook for the purpose of receiving legal advice.

The United States further requests that the Court order that this application and any resulting order be sealed for 60 days, unless the Court orders otherwise. As explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

DATED: Buffalo, New York, October 29, 2018

Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5819
john.fabian@usdoj.gov